## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

### OF THE

# STATE OF VERMONT

---

## Isaac Richardson *vs.* Joseph H. Dorr.

CALEDONIA,
*March,*
1833.

Richardson
*vs.*
Dorr.

If a person take possession of land under a vendue deed, twenty-three years old, without previously setting up any claim of title to said land, and holds possession five years under said deed, the age of the deed, and possession under it, raise no presumption, that the deed is a valid one.

Where a statute makes it the duty of a sheriff to collect taxes, he must perform every pre-requisite, or his deed will be void.

A collector of taxes, who has given a vendue-deed of lands, which he sold, and has covenanted in such deed, *to warrant and defend the same,* is interested, and cannot be a witness to support the title without a release.

A copy of vendue sales, lodged in the county clerk's office, which carried *internal* evidence, that it was not left in said office within thirty days next after the sales, and was not attested by the collector, as a true copy, as the statute required, was rightly excluded by the county court from going to the jury as evidence.

Where A. contracts with B. that he is lawfully seised in fee of the premises—to satisfy the words of this covenant, A. must show that he had an estate in *fee in the land which he deeded, and was seised of the same,* and had a right *of possession.*—Showing an estate less than a fee; or a tortious possession would be showing a breach of the covenant. In such case the rule of damages is the consideration paid for the land, and interest of the money; but there are exceptions to this rule.

The covenant against incumbrances is broken by an out-standing mortgage upon the land, when the deed was given.

The rule of damages is, the money paid by the plaintiff to remove the incumbrance—if nothing was paid, the plaintiff should recover only nominal damages.

The covenant for title is broken, if the grantor had not the very estate in quantity and quality, which he covenanted he had a right to convey.

The decisions of the courts in *Massachusetts* and *New-Hampshire,* respecting the personal covenants in a deed of land, are questioned.

2

CALEDONIA,
March,
1833.

Richardson
vs.
Dorr.

This was an action of *covenant broken*, brought on the covenants contained in the defendant's deed to the plaintiff, of lands in Charleston, late Navy, in Orleans County. Issue to the country.

The writ, pleadings, deeds, and all papers used on the trial, are made a part of the case. The defendant gave in evidence a deed, from *John Rankin*, Sheriff and Collector, of the lands in question, dated Nov. 21, 1799, and read the statute granting the tax upon which said lands were sold, and gave evidence to show that the defendant took possession of said lands under said deed in the spring of 1822, and that the plaintiff succeeded to said possession under the deed including the covenant declared upon, and then rested his case—contending that the deed being of so ancient a date, and possession having been taken under said deed, and the plaintiff not having been molested, and disturbed in said possession, the law would intend, that the Sheriff's sale was regular, *prima facie*. But the Court decided that the deed and possession, though quiet and peaceable, did not furnish a defence in said action. The defendant then gave evidence of the warrant of the Treasurer of the State to *John Rankin*, Sheriff and Collector of said tax; and of the Surveyor General's certificate of the quantity of land in the township of Navy, and that Navy was then an unorganized township; and of the application of the Sheriff and Collector upon receipt of said warrant, to the Secretary of the Governor and Council for a list of the names of the proprietors of said Navy; and also of a list of the assessment of said tax on said Navy by said Sheriff and Collector. The defendant also gave evidence tending to prove, that the several newspapers containing the advertisement of said sale, were not in the office of the Clerk of Caledonia County Court; nor were any records of said advertisement to be found in said office. The defendant then gave evidence of the advertisement of the sale of lands by producing the several newspapers containing the original advertisement, to wit: the Vermont Gazette, Spooner's Journal, and Rutland Herald; and also of the sale of the lands in question to the defendant, and of the lands not redeemed; and of the deeding of said lands; and of a certified copy of said sales returned to the Clerk aforesaid for record; and of lodging the several

newspapers containing the publication of said original advertisement within thirty days next after the sale by said Sheriff and Collector, as the law directs. The defendant gave evidence tending to show that there was in the office of said Clerk, in 1806 or 1807, a book of records purporting to be the records of the aforesaid sales.—But on this point the evidence was contradictory.

The defendant here rested his case, contending that he had in law made out a defence to said action. But the Court decided, that the showing, and evidence produced by the defendant, furnished no defence to the plaintiff's action. The defendant then contended that under the circumstances of the case, the plaintiff was entitled to but nominal damages. But the Court decided, and so instructed the jury, that the plaintiff was entitled to the consideration money paid, and the interest, as damages, and instructed the jury to return a verdict accordingly. To which decisions of the Court, and directions to the jury, the defendent excepts.—-Exceptions allowed. The evidence given of a certified copy of said sales, returned to the office of said Clerk, was the parol testimony of *John Rankin,* the Sheriff, and Collector of said tax.

*Isaac Fletcher, Esq. Attorney for Defendant,* proceeded as follows :—

This is covenant broken, for lands in Charleston, Orleans County. *Plea,* That the defendant (grantor) at the time of making the deed was seised. *Replication,* That he was *not,* and issue closed.

To support the issue on the part of the defendant, he offered a vendue deed, executed by *John Rankin,* Sheriff and Collector, dated Nov. 21, 1799, of the premises conveyed by said deed, duly acknowledged and recorded, and gave evidence tending to prove, that in the spring of 1822, he took possession of the premises under said deed, and that it was continued uninterrupted up to the time of executing the deed to the plaintiff—that the plaintiff succeeded to his title and possession under his deed, and that the plaintiff has never been disturbed in his possession.

The defendent here contended that he had made out a *prima facie* defence, and that to recover, the burthen of proof was on the part of the plaintiff.

CALEDONIA,
March,
1833.

Richardson
vs.
Dorr.

This is the equity of the case : The plaintiff is entitled to recover only in case of actual damage. Here is no breach of covenant in contemplation of law for want of title in the grantor. The possession of the plaintiff has never been disturbed, nor does the law *intend* that that it ever will be. For ought appears, the title of the covenantor is good, and the law will presume a right, where the exercise and enjoyment of that right is notorious and undisputed.

Here is a right claimed under an ancient vendue. The deed is of thirty-four years standing. During all that time taxes have been paid on the land by those claiming title under this deed. Possession has been taken under the grant, and enjoyed for more than ten years. This possession has been uninterrupted, quiet and peaceable, without claim or hindrance ; and there is no presumption arising that the plaintiff will ever be disturbed ; but the presumption in law is, that the plaintiff's title is perfect, and the law often presumes a grant from acquiescence and lapse of time. 3 *Starkie's Ev.* 1216 (n)—do. 1221.—*Bull N. P.* 255.—10 *John. Jackson* vs. *McCall*, 377.—9 *John. Doedem* vs. *Phelps*, 169, 171.—14 *Mass. Stockbridge* vs. *Stockbridge*, 257.

The defendant took possession under his deed, and gave actual possession to the plaintiff. If this be not conclusive evidence of a valid seizin in the covenantor, it is at least *prima facie* evidence, from which the law will intend that all outstanding titles and claims have been quieted, and the covenant of seizin not broken. 4 *Dane.* 21, sec. 3. do. 344, sec. 8.—4 *Mass.* 410, 442—do. 627.—16 *Mass.* 213.

But I consider that all the proceedings of the Sheriff in collecting the tax, and also in deeding to the defendant, were strictly in pursuance of the act laying the one cent tax. (See *Tomlin's Ed.* 2 vol. 256.) By this statute it is made the duty of the County Clerk to record the sales, but it is to be noted that no time is specified within which the Clerk is to make this record, nor is it made the duty of the Collector to cause it to be done. If the statute had imposed this duty upon the Collector, or directed it to be made up before the time of forfeiture accrued, and the time of deeding had arrived, it might have deserved a different consideration.

The defendant holds under the grant of the Collector. He acts as an agent of government. The law will intend that he has complied with all the legal requisites, till the contrary appear. This is sufficiently evidenced being under his oath of office ; and there can no presumption arise to the contrary.

The law, in 1797, had made no provision for perpetuating any other evidence than the sales and the newspapers. It could not be expected, that any other evidence should be preserved. But fortunately the Sheriff and Collector is living, and can testify to his doings.

Thirty-five years have elapsed since the transaction. All other claims of title have been abandoned. This is presumption violent that the vendue of *Rankin* was regular. From this acquiescence its legality may be presumed. At least, it ought to be considered as *prima facie* legal in absence of all claim or evidence to the contrary.

But the plaintiff has shewn no actual damage. His damage, if any, *is in futuro*. It may, or may not happen. He has his indemnity upon the covenant of warranty. Actual, not imaginary damage, ought to be the rule of recovery. In contemplation of law, no damage whatever has been sustained. He is in quiet and peaceable possession of the premises. Even if the right be inchoate, shortly the title will be perfect. The plaintiff has no equity.

A recovery upon the covenant of seizin would be no bar to a recovery upon the covenant of warranty. This is a covenant running with the land. If the plaintiff should grant the premises, and his grantee be ousted, the defendant would be liable to him for the full value of the premises at the time of ouster. This would be refunding the consideration money and paying the full value of the land. This would be manifestly inequitable and unjust.

If an action will lie at all, nominal damages, in absence of all proof to the contrary, must be the rule of recovery. 4 *Dane*, 346, *Sec.* 9.—4 *Mass. Rep. Prescott* vs. *Truman*, 627.—3 *Vermont Rep. Catlin* vs. *Hurlburt*, 403—408.

*Charles Davis, Esq. Attorney for Plaintiff,* contended as follows :—

It appears from the pleadings, deeds, &c. made a part of this case—that the action was *covenant broken,* in which

*CALEDONIA,*
*March,*
*1833.*

Richardson
*vs.*
Dorr.

CALEDONIA.
March,
1833.

Richardson
vs.
Dorr.

plaintiff claims to recover the consideration money and interest embraced in the deed mentioned in his declaration, on the ground that the defendant had no title to the land he undertook to convey. The defendant contends, first, that a vendue deed from *John Rankin*, Sheriff and Collector of the one cent tax, imposed by act of Nov. 10, 1797, on the unorganized towns in Caledonia County, of the lands in question, which deed is dated Nov. 21, 1799, together with the production of said act, and proof that he took possession in 1822, and transferred possession to plaintiff at the time of his conveyance in April, 1827, and plaintiff having hitherto remained undisturbed altogether, create a legal presumption that all the said Sheriff's proceedings anterior to the execution of said deed were legal. What most of these facts have to do with the conclusion, it is difficult to see. If the defendant had taken possession at the date of his deed from *Rankin*, or at any other time more than 15 years previous to the date of his deed to plaintiff, he might have well contended that he had not broken his covenants, and of course would have had no occasion to prove or presume any thing with respect to the Sheriff's proceedings.

But it is a new idea that the mere antiquity of the deed unaccompanied by possession, creates a title by possession, or in the case of a vendue deed dispenses with the necessity of shewing the authority under which one man conveys another's land. There is no statute of limitations applicable to such a subject. Possession for a sufficient length of time, with or without a deed, might have availed the defendant; but a deed alone, or with a possession of five years only, cannot. The defendant then offers a mass of papers and other testimony in relation to said vendue, against which numerous objections are made by plaintiff, a few only of which, and the most important, will it be necessary or practicable to notice here. These are, that the original advertisements required to be published in the Bennington, Rutland and Windsor papers, by the act required to be lodged with the Clerk within 30 days of sale, are not produced from his office.—Proof by the production of papers in private custody, purporting to have been printed in those towns, and to contain said advertisements, is not admissible, though the Clerk testifies that there are none

Caledonia,
March,
1833.

Richardson
vs.
Dorr.

such in his office, and the late Sheriff testifies that he lodged them there seasonably—that the papers produced, if admissible, would not shew a compliance with the act, which required a successive publication for three weeks, the last to be 10 days before sale. The Bennington and Rutland papers contain an advertisement dated April 1, 1798—the Windsor paper has one of similar import, dated April 2, published in two successive numbers, and in an extra half sheet—that there is no regular certified copy of the sales on record in the Clerk's office, as required by the 20th section of the act—that parol proof that the Sheriff and Collector lodged a copy there seasonably, is not to be received—that the original book of sales is not admissible as evidence without having been recorded—that the book purporting to be a copy now in the Clerk's office, referred to in the exceptions, is not properly attested by said Sheriff and Collector—is not recorded, and contains no evidence of the time when it was left, and shews that sales were made at 9 o'clock A. M. whereas the act requires them to have been *between* 9 and sunset, and shews no adjournment from the 5th to the 6th of June, and yet the land in question was sold on the 8th.

With such numerous and important defects in defendant's evidence of a regular sale, the Court could not come to any other conclusion than they did, that he had failed to make a title under said vendue. As to the necessity of shewing perfect records of what the law requires to be recorded, see 2 Vt. Rep. 319, *Coit* vs. *Wells.* The defendant finally contends, that the Court erred in not directing the jury that under the circumstances of this case, plaintiff was entitled to only nominal damages. As to the general doctrine with respect to the covenants of seizin, and the rule of damages in such case, though heretofore often made the subject of much discussion in this State, it is unnecessary to go further back than the case of *Catlin* vs. *Hurlbut,* 3d Vt. Rep. 403, which has deliberately settled or rather re-settled the true doctrine. The amount of damages is the consideration and interest. The case of *Garfield* vs. *Williams,* 2 Vt. Rep. 327, where nominal damages only were given, has no application to the present. The plaintiff had been so long in undisturbed possession as to have acquired a perfect title at the commencement of his suit, and on this ground

CALEDONIA,
March,
1833.

Richardson
vs.
Dorr.

alone it was that the decision was made. In this case the plaintiff either has already or will have to purchase in the title of the true owner or lose his land.

The opinion of the Court was delivered by

BAYLIES, J.—This is an action of *covenant broken*, brought on the covenants contained in the deed from *Dorr*, the defendant, to *Richardson*, the plaintiff, dated April 7, 1827, of the whole lot number 75, (except 100 acres previously sold by said *Dorr* to *Simeon Stearns*) drawn to the first Division of the Right of *Charles Jenkins*, in the town of Charleston, late Navy, in the County of Orleans. The covenants are in these words : " I am lawfully seised in fee of the " aforesaid premises ; that they are free of all incumbran- " ces ; that I have good right to sell and convey the same " to the said *Isaac Richardson*." The plea is, that the defendant has kept and performed all and each of the covenants contained in said deed, to wit, at *Danville* aforesaid ; that the defendant, at the time of the delivery of said deed to the plaintiff, was lawfully seized in fee of the said granted premises—that they were free from all incumbrances, and that he had good right to sell and convey the same to the plaintiff.——Issue to the country.

The plaintiff, to support the issue on his part, gave in evidence to the jury his deed from the defendant, containing said covenants. And the defendant, to support the issue on his part, gave in evidence a deed from Col. *John Rankin* to the defendant of the land in question, dated the 21st day of November, 1799, and acknowledged and recorded the same day. This deed, on the face of it, purports to be a vendue deed, executed by Col. *Rankin*, as Sheriff of Caledonia County, and Collector of the one cent tax, laid to support government during the year 1797, and for other purposes : this act was passed 10th Nov. 1797.—(See Tomlin's Ed. vol. 2, p. 256.) The consideration of this deed, as expressed, was $3, 56, being the amount of the tax on the lands in question, and costs of sale. And it appears that the defendant took possession of said lands under this deed, in the spring of 1822, and continued his possession till he deeded to the plaintiff, and put him into possession. When the defendant took possession, his vendue deed had existed 23 years ; and he now contends that

CALEDONIA
March,
1833.

Richardson
vs.
Dorr.

from the age of this deed, and his possession under it, it is *presumed* he had a good title, when he deeded to the plaintiff; and *this presumption* of title is to stand, until it is overpowered by evidence adduced by the plaintiff.

But the Court cannot recognize this as law : the defendant not setting up a claim of title, nor taking possession of the lands under his vendue deed for twenty-three years, if any *presumption* can be raised from these facts, it is a *presumption* against the defendant's title. The defendant must show, that the Sheriff, in the collection of the tax, did those *essential* things, which the law required him to perform, as Collector, before he executed his deed to the defendant; if he omitted any *pre-requisite*, the deed is void.

The 20th section of the aforesaid act required, "That " the several Collectors should, within thirty days next after " the ending of such vendues for the sale of lands, lodge a " true and attested copy of such sales, together with their " advertisements thereof, with the several town, or County " Clerks, as the case may be; whose duty it shall be to re- " cord the same at the expense of such Collectors." To prove that this section was complied with by the Collector, the Collector himself, Col. *Rankin*, was offered by the defendant, as a witness, and testified, that he left a copy of his sales, and the newspapers containing the advertisement with the County Clerk, within thirty days, as required by law ; but *he thinks, on looking at it, that the copy now in the Clerk's office is not the one he left.* Here I would observe, that Col. *Rankin* was the only witness to prove these facts, and he did not testify that he requested the Clerk to record the copy which he left, at *his expense;* nor that he had ever seen such record.

As the validity of this vendue title was called in question, and Col. *Rankin*, as Collector, had covenanted, in his deed to the defendant thus,—" that I will, in my capacity aforesaid, warrant and defend said land, to him the said *Joseph H. Dorr*, his heirs and assigns, against the lawful claims or demands of any person whomsoever," he was interested in the *particular question* that was agitated, and could not testify, if the plaintiff had objected, without a release from the defendant.

Gov. *Palmer* also testified, that, "on his taking possession of the Clerk's office, in the year 1806 or 1807, he found

3

CALEDONIA,
March,
1833.

Richardson
vs.
Dorr.

every thing in the office in great confusion, and spent much time in arranging papers, records, &c.—having overhauled every book and paper in the office—that he never saw the newspapers in the office which Col. *Rankin* had sworn he left there, and that he had some recollection, or impression, that at some period he had seen a *blue book*, purporting to be a book of said vendue sales, but could say nothing defi-· nite about it—could not say what became of it; and did not know but the book from the Clerk's office was the one he had seen."

Col. *Rankin* does not testify *positively*; but "he *thinks*, on looking at it, that the copy now in the Clerk's office is *not* the one he left." This copy was offered in evidence on trial, but was rejected by the Court. Now let us inquire, 1st, Was this copy left by the Collector in the County Clerk's office within thirty days next after the vendue sales, to be recorded? 2d, Is it attested by the Collector, as a true copy of the sales? On the title page of this copy are written these words: "A record of the collection before sale, and the sale of lands of the unorganized Towns and Gores in the County of Caledonia, for the Cent State Tax, granted by the General Assembly of the State of Vermont, at Windsor, in October, 1797, by *John Rankin*, Esq. Sher-iff of said County, and Collector of said Tax."

On the first page is copied the Treasurer's Warrant to said Sheriff to collect said tax, on the lands described.— Then comes the Sheriff's Advertisement, published in the newspapers. Then each subsequent page is divided into columns differently headed—some relating to the sales of land—some to the redemption of land, after it was sold; and some to the deeding of land, not redeemed.

On the last page is the following certificate: " State of Vermont, Caledonia County *ss.* County Clerk's Office, Ju-ly 1, 1805. I hereby certify that the foregoing are true copies of the Record of John Rankin's collection and sale of the unorganized Towns and Gores in said County, at the Cent tax, granted by the Legislature, at Windsor, in Octo-ber 1797. Attest, Elkanah Phelps, Clerk."

This copy carries *internal* evidence, that it was not left in the County Clerk's office within thirty days next after the sales, to be recorded; such are the *entries* in the six last columns on each page: these *entries* relate to the redemp-

tion of land sold, and to the deeding of land not redeemed; none of which took place within thirty days next after the sales. The deeding, by statute, could not be till a year after the sales : And from these entries, I infer, that the copy was made and left, in the County Clerk's office, after the lands were deeded; probably about the time the Clerk made his certificate. Moreover, it does not appear that the Collector, under his hand, ever attested this copy, as a true copy of his sales. The County Court did right in not admitting this copy to go to the jury as evidence. This copy being excluded, there was no *legal* evidence, from which the jury could find, that the Collector complied with the requisitions of the 20th section of the act aforesaid; and, without such compliance, the Collector had no power to execute his deed to the defendant of the lands in question. The defendant does not pretend he had any other title than by this deed, and actual possession of the land, under it, for about five years, claiming in fee. As the defendant derived nothing from the deed but colour of title, was he enabled, by *his possession* and *claiming in fee*, to give a deed of the land which would convey an estate in fee? Certainly not. Then he has not kept the covenants contained in his deed upon which he is sued.—The first is, " I am lawfully seised in fee of the premises." This is called the *covenant of seisin*, and, to satisfy its words, the defendant must show, that, when he made this covenant, he had, not only an estate in fee in the land which he deeded, but also, that he was seised of the same, and had a right to the possession. If the defendant had an estate in the land, less than a fee, or was seised by wrong, he was not " lawfully seised in fee of said premises," and broke his covenant, when he made his deed. The general rule by which to estimate the damages for the breach of this covenant is the consideration paid for the land, and interest; but to this rule there are exceptions.—(*Garfield* vs. *Williams*, 2 Vt. Rep. 327—*Catlin* vs. *Hurlbut*, 3 Vt. Rep. 403—4 Kent's Com. 462, 464.)

The second covenant is, " that they are free of all encumbrances."—This is called, *a covenant against encumbrances*, and is broken by an out-standing mortgage upon the land, which had not been paid. The rule of damages, in some of the States is, the money paid by the plaintiff to the

CALEDONIA,
March,
1833.

Richardson
vs.
Dorr.

CALEDONIA,
March,
1833.

Richardson
vs.
Dorr.

mortgagee, to clear off the mortgage; but if the plaintiff has paid nothing, he can recover only nominal damages.— (*Delavergen* vs. *Norris*, 7 J. R. 350.—*Stanard* vs. *Eldridge*, 16 J. R. 254.—*Prescott* vs. *Trueman*, 4 Mass. R. 627.)

This rule has often been recognized by our Courts as law. But, beside mortgages, there may be other encumbrances upon the land, for which the grantee should recover damages, on this covenant—(See 2 Mass. Rep. 97—4 Mass. Rep. 627.)

The third covenant is, "that I have good right to sell and convey the same to the said *Isaac Richardson* as aforesaid." This is called a *covenant for title*, "and is an assurance to the purchaser, that the grantor has the very estate, in quantity and quality, which he purports to convey, viz : in this case, an indefeasible estate in fee simple."—(*Howell* vs. *Richards*, 11 East. 642.) If this assurance be false, the covenant is broken, and the purchaser has his remedy for the damages which he has sustained.

These covenants are of vast importance to the purchaser of lands, to secure him against the misrepresentations of the vendor, as to his title. They are *personal* covenants, and are broken as soon as the deed is given, if broken at all, and are not assignable. We do not construe these covenants as they have been construed in some of our sister States. It has been said by Ch. J. *Parsons*, in *Manton* vs. *Hobbs*, 2 Mass. Rep. 433, that, to sustain a covenant of seisin, it is not necessary " to show seisin under an indefeasible title; that a seisin in fact is sufficient; and that if, at the time the grantor executed the deed, he had the exclusive possession of the premises, *claiming* the same in fee simple, by a title adverse to the owner, he was seised in fee, and had good right to convey." To the same effect were the opinions expressed in *Twambly* vs. *Hinley*, 4 Mass. Rep. 441, and *Prescott* vs. *Trueman*, 4 Mass. Rep. 627. In *Willard* vs. *Twitchel*, 1 N. H. Rep. 177, the Court say, " The covenants in our deeds that the grantor is the lawful owner, that he is seised in fee, and that he has good right to sell and convey, have always received a construction that makes them merely synonymous. Each of them amounts only to a stipulation, that the grantor has such a seisin that the land will pass by his deed. If the grantor, at the time of the conveyance, has actual seisin, whether by right or by

CALEDONIA,
March,
1833.

Richardson
vs.
Dorr.

wrong—whether under a valid title or by disseisin, the land will pass by his deed, and neither of these covenants is broken."

I cannot believe, that these decisions, which were made in *Massachusetts* and *New-Hampshire*, are in accordance with the common law. It is said in Shep. Touch. 170, *"* If one be seised of land in fee, or possessed of a term of years, and he doth alien it, and supposing he hath a good estate he doth covenant that he is lawfully seised, or possessed, or that he hath a good estate, or that he is able to make such an alienation, &c. and in truth he hath not, but some other hath an estate in it before ; in this case the covenant is broken as soon as it is made." Ch. J. *Hosmer*, in *Lockwood* vs. *Sturdevant*, 6 Conn. Rep. 3Ō8, speaking of the cases in *Massachusetts*, says, " I am constrained to observe, that notwithstanding the veneration I entertain for the highly accomplished jurist who expressed the above opinions, I cannot yield to them my assent. That which shows covenants of seisin, and of right to convey, to be broken, is their falsity. If the covenants are true, they remain inviolate ; if they are not true, they are broken. On the same principle, if they are entirely false, they are wholly violated ; and if partially untrue, they are broken but in part only. All this is self-evident. Although the covenantor should have had the actual possession of the premises, and an ideal, or imaginary right, founded on a supposed title that was merely colourable, *yet this is not a legal seisin in fee* ; and nothing short of this will support a covenant, that the grantor is seised in fee simple, because nothing short of this proves the covenant to have been true. This construction necessarily results from the unequivocal words of the covenantor, and the unquestionable object of the covenant. A seisin in fact of an estate in fee simple, if the word *seisin* intends any thing more than possession, is an expression without meaning, where there is no seisin in law. In the nature of things, there is but one species of seisin in fee, and that necessarily is, the possession of an estate conjoined with such legal interest as the term *fee simple* denotes."

I cannot but accord with the sentiments which are here expressed by Ch. J. *Hosmer*. If we depart from the common law in giving a construction to these personal cove_

CALEDONIA,
March,
1833.

Richardson
vs.
Dorr.

nants, which are usually contained in a deed of land, we may make them mean any thing or nothing. If there be a local law in *Massachusetts* or *New-Hampshire,* by which they expound these covenants, that law is no authority for us.

Judgment of the County Court is affirmed.